OLNEY (UNITED STATES v.). See Case No. 15.918.

OLNEY (WHITNEY v.). See Case No. 17,-593.

## Case No. 10,507.

### OLSHAUSEN v. LEWIS.

[1 Biss. 419.] [1]

Circuit Court, N. D. Illinois. Jan., 1864.

WHEN HOLDER OF DRAFT BOUND TO USE DILIGENCE—BILL OF EXCHANGE—EFFECT OF HOLDING.

1. If the maker of a draft had a well founded expectation that if presented within a reasonable time it would be honored. the holder must, in order to recover against him. use due diligence in presenting it, and give him notice of its dishonor.

2. The following instrument: "St. Louis, May 10, 1861. At sight pay to the order of Stilwell. Powell & Co., four thousand dollars, value received, and charge the same to the account of Lewis, Page & Co. To the Marine Bank of Chicago, Ill.,"—is a bill of exchange, and not a check.

3. It is payable in the current coin of the country, and not in depreciated bank notes.

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

4. Oral testimony is not competent to change its legal effect.

5. The holder having retained it at Chicago more than a month without presentation, and not having protested it until three weeks after that time, is guilty of such negligence that he cannot recover of the drawer.

The instrument upon which the action was brought was as follows: "St. Louis, Mo., May 10, 1861. At sight pay to the order of Stilwell, Powell & Co., four thousand dollars, value received, and charge the same to the account of Lewis, Page & Co. To the Marine Bank of Chicago, Ill."

On the same day on which the draft was drawn it passed into the hands of the plaintiffs by indorsement, and by them it was forwarded to Munn & Scott, of Chicago, with instructions to collect or convert into New York exchange, and remit proceeds. Munn & Scott did not present the draft at all, but kept it until June 13th, and then returned it to the plaintiffs. On the 19th of June it was sent by the plaintiffs to the Merchants' Savings Loan and Trust Company of Chicago. with instructions to present for payment. On the 24th, it was presented, and the Marine Bank tendered depreciated Illinois bank bills in satisfaction. which were refused, whereupon the draft was returned to St. Louis without protest. In the meantime, on or about May 18th, these Illinois bank bills had gone out of circulation. It was again sent to the loan and trust company for presentation, with instructions that, if payment in coin or current money were refused, the draft should be protested. It was presented the second time on the 6th of July. The bank refusing to pay in such funds, the draft was protested, and notice given to the defendants of its dishonor. The defendants claimed to be discharged from liability on the draft, on the ground "that due diligence was not used by the holders in presenting it to the bank for payment," and that "the draft was not protested, and notice given to the defendants of its first dishonor." The defendants, up to the time of the drawing this draft and its dishonor, were large depositors at the Marine Bank, and it appeared from the evidence, that their deposit account varied from $3,000 to $12,000; that they were men of undoubted responsibility, and that at the time this draft was drawn their credit was of the highest character, and such that a draft of this amount would have been paid by the bank, no matter what was the precise state of their account at the time. It appeared from the evidence, that at this time, the business in Chicago, and generally throughout this part of the country, was transacted in Illinois bank notes, a depreciated currency. and that there was a great deal of excitement upon the subject of the currency, and that the general tendency of its value was downwards; that the Marine Bank kept the accounts of their customers in the same way precisely that they would have kept them if

the currency had been sound and equivalent to gold and silver. They were in the habit of receiving special deposits, and where the currency of the country was left with them, it was placed to the credit of the depositor, and, unless special instructions were given, as a credit in so many dollars and cents. They kept the account, however, in such a way as to show the nature and character of the money that was deposited; and where gold was deposited, or Eastern bank notes, or bank notes of much greater value than Illinois bank notes, the bank held itself responsible to pay the depositor the equivalent. These defendants kept their account with the Marine Bank in the same way that all the rest of the accounts were kept; they deposited these Illinois bank notes, and were credited in the usual way, and the bank held itself responsible to the defendants for the payment of moneys similar, or bank notes similar in character to those which were deposited. It also was in evidence that if the defendants had drawn a draft or check upon the Marine Bank, payable in gold or in New York exchange, and so specified, if the bank had had the gold or New York exchange, it would have been paid. The evidence also showed that by a sort of understanding among the bankers and the business community, in order to make a check or draft payable in gold, it should be so specified upon its face, otherwise it was treated as payable in the currency of the community, Illinois bank notes. A suit was accordingly brought against the drawers by the holders to recover the amount of money specified in the draft.

Cornell & Norton, for plaintiffs.
Kales & Williams, for defendants.

DRUMMOND, District Judge (charging jury). The instrument upon which this suit is brought is, in its form, a bill of exchange, and is to be governed by the rules applying to such bills.

Its legal effect is that it is payable in money, in the current coin of the country, and the holder had the right to call upon the Marine Bank, not for depreciated bank notes, but for money, and, on its refusal, to hold the drawers. It is not competent to introduce any oral evidence to change the legal effect of this instrument.

The question then arises, whether these defendants had the right to draw upon the Marine Bank for this sum of money. If they had, secondly, whether due diligence has been used by the holders of the bill, in its presentment to the drawee.

It is contended on the part of the plaintiffs, that the defendants had no right to draw this draft, for the reason that it is a draft for the payment of $4,000 in good money, and that they had not at that time, or at the time when, in due course of business, it might be presented for payment, this sum in good, money on deposit in the bank. I think the true rule on that subject is stated in Parsons on Bills of Exchange, that the drawer should have a reasonable expectation at the time he draws a draft that when it is presented for payment, proper diligence being used in relation to its presentment, it will be duly honored.

It is contended on the part of the defendants, that, under the conceded facts of this case, it is a question of law whether the defendants had a reasonable expectation that this draft would be paid, if presented within a proper time. If they had, then it was incumbent on the holders to present it within a reasonable time, using proper diligence, and, upon its non-payment upon presentation, to give notice to the drawers. Now the testimony upon which it is contended, on the part of the plaintiffs, that they had no reason to expect that this draft would be paid, is substantially, that the kind of money which was deposited was depreciated bank notes, and that, in the absence of any special statement upon the face of the draft, it would not, in point of fact, have been paid by the drawee, at any time after it was drawn. Independent of the usual mode of doing business, which has been detailed by the witnesses, it is also contended that there was an agreement between these defendants and the Marine Bank, that they should receive, on checks which they drew, the same kind of bills that they placed on deposit. There is no direct or positive evidence as to the signing of this agreement by the defendants. There is the evidence of two witnesses, that instructions were given by the officers of the bank, that all the customers of the bank should enter into such an agreement, and that no business should be done with them unless they did, and a notice was pasted in the bank-book of each customer to that effect, which notice has been introduced in evidence; and it is considered, on the part of the plaintiffs, that the bank-book of the defendants had a similar notice in it, because, from the testimony which has been adduced, that was the course of business, and notice has been given to the defendants to produce that bank-book. They have not done so, and the plaintiffs claim that the presumption in consequence of the non-production of this bank-book, and the other testimony in the case, is that this book had a similar notice pasted in it. I shall leave it as a question of fact to be found by the jury, whether there was this agreement between the Marine Bank and the defendants.

A sufficient consideration for such agreement would be the fact that the Marine Bank agreed to receive these notes on deposit.

It is contended by the defendants, however, that this agreement was done away with by mutual consent before this bill or draft was presented. This would not, how-

ever, avoid the effect of the evidence, as to what existed in the minds of the defendants at the time they drew this draft. The question is as to the expectation there was in the minds of the defendants at the time they drew this draft, as to its being paid on presentation. If they had no reasonable expectation, at the time they drew this draft, that it would be paid, if presented within a reasonable time, then they are not entitled to a demand and notice of non-payment; because in such cases it is in the nature of a fraud upon the party with whom the draft was negotiated; but if you shall believe from the evidence, that they had reasonable ground to believe or to suppose that this draft would be paid, then they are entitled to the exercise of due diligence on the part of the holder, and if due diligence has not been used, then the plaintiffs cannot recover from the defendants.

The holders of this draft, Munn & Scott, had no right, upon a supposition existing in their own mind, to decline to present it. There can be no absolute rule laid down with reference to the time in which a bill of exchange shall be presented to the drawee; that depends upon the circumstances of the case. But where the facts are undisputed, as in this case, it becomes a question of law. This draft might have been sent to any part of the world; it might have been sent to New York or California, or it might have been sent to the East Indies; it might not have reached the Marine Bank for a year, or eighteen months or more, and still it might be it would have been, as against the drawer, presented in reasonable time. All that the law requires is reasonable diligence under the circumstances of the case; but here the draft was sent immediately to the place where it was payable, and where the drawee was; it was retained here a whole month, returned to St. Louis, returned again to Chicago, and presented to the Marine Bank for payment, no notice being given to the defendants of non-payment; and not actually protested and notice given to the defendants till the 6th of July. Under the circumstances of the case, I feel constrained to say that due diligence was not used by the holders in the presentation of the draft; and, if the other fact existed, to which I have already so often called your attention, that there was a reasonable expectation that the draft would be paid, then, there not being due diligence used by the holders, the defendants cannot be held responsible on the draft.

The jury found for the defendants.

For rules as to presentment and notice, consult 3 Kent. Comm. 104 et seq.; 1 Pars. Cont. 268; Story, Bills, § 324.

OLUF, The. (WESTHOFF v.). See Case No. 17,449.

OMAHA (KOUNTZE v.). See Case No. 7,928.

OMAHA (OLIVER v.). See Case No. 10,499.

OMAHA (SERROT v.). See Case No. 12,673.